IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 19 CV 3440 |
| | ) | |
| Funds in the amount of | ) | |
| $130,000 United States | ) | |
| Currency and Funds in the | ) | |
| amount of $53,000, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This is a civil forfeiture action governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and Supplemental Rule G of the Federal Rules of Civil Procedure. CAFRA "put[s] the burden on the government to prove by a preponderance of evidence that property is forfeitable," while Rule G "places the burden on the claimant to prove by a preponderance of evidence that he has standing" to contest the forfeiture and "requires a claimant to comply with certain procedural requirements" to satisfy that burden. *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 646, 643 (7th Cir. 2015).

In this case, the government seeks forfeiture of funds it seized from brothers Hweih and Rayan Elabad (to whom I refer collectively as "the brothers") as they alighted from an airplane

at Chicago's Midway airport. The government's verified complaint alleges that the funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) on the ground that they were furnished, intended to be furnished, traceable to, used to facilitate, or involved in narcotics and/or racketeering offenses. The brothers filed verified answers to the complaint in which they deny any involvement in the alleged offenses and state that the seized funds are proceeds from the sale of electronics by Rayan's company, We Buy N Sell, Inc., to an overseas client.

Three motions are pending: first, the government moves to strike the brothers' answers and to enter a judgment of forfeiture on the ground that neither Hweih nor Rayan has filed the verified claims that Rule G(5) requires to establish so-called "statutory standing."[1] Alternatively, the government's motion seeks summary judgment on the ground that because the undisputed evidence shows that non-party We Buy N Sell, Inc., is the owner of the funds, the brothers lack standing to challenge the forfeiture. In a second and related motion, the government moves to deem the facts it sets forth in its L.R. 56.1 Statement admitted based on the brothers' failure to file responsive statements as required by the Local Rules. Finally, the brothers move for leave to file untimely

---

[1] The government does not challenge the claimants' Article III standing, the "irreducible constitutional minimum" required in every case brought in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 560 (1992).

verified claims. For the reasons that follow, I grant the government's motions and deny the brothers'.

I.

Because the government's motions are grounded on procedural shortcomings it identifies in the brothers' submissions, only a brief summary of the government's substantive allegations in support of forfeiture is necessary.[2] On December 15, 2018, DEA Task Force agents approached the brothers as they disembarked from a flight originating at New York's LaGuardia airport after TSA agents at LaGuardia advised them that Hweih was carrying large amounts of cash while traveling on a one-way ticket that Rayan had purchased less than ten hours prior to departure—factors the agents found consistent with drug trafficking. The brothers agreed to speak to the Task Force agents, and, in separate interviews, each confirmed that he was carrying a significant amount of cash.

Consensual searches of the brothers' luggage produced bags of bundled bills totaling $53,000 from Hweih's carry-on and $130,000 from Rayan's. The brothers claimed that these funds were the proceeds of a sale of cell phones by Rayan's company, We Buy N Sell, Inc., to a customer in Dubai.[3] Hweih explained that the

---

[2] In a footnote, the government states that although it disputes "aspects" of the brothers' claims to the funds, "the government's summary judgment theory does not require resolution of the government's merits case for forfeiture." Mot. at 5, n.3
[3] The record reflects that at some point, Hweih became a joint owner of this company, but both brothers testified that at the

customer had instructed Rayan to meet a middleman in New York to receive payment for the phones in cash, and that Hweih carried out these instructions on behalf of Rayan's company. But inconsistencies in the brothers' accounts of their business dealings, together with other factors including those noted above, led the DEA agents to detain the funds for further investigation. A drug detection canine later alerted officers to the scent of narcotics on the currency.

Based on the foregoing circumstances, the DEA instituted administrative forfeiture proceedings. Through counsel, the brothers filed timely claims to the seized funds in those proceedings. Rayan's claim stated that the "purpose of that currency is with his employment as President of We Buy & Sell, Inc., in the business of used and electronic devices and repairs them and sells them (sic)." Pl.'s L.R. 56.1 Stmt., Exh. 8 at ¶ 4. Hweih's claim stated similarly that the "purpose of that currency is with his employment with We Buy & Sell, Inc., in the business of used and electronic devices and repairs them and sells them (sic)." *Id.*, Exh. 7 at ¶ 4. Both claims stated that "buying and selling in cash was the nature of the business of We Buy & Sell, Inc.," and attached the corporation's 2017 income tax returns

---

time of the seizure, Rayan was the company's sole shareholder. *See* Pl.'s L.R. 56.1 Stmt., Exh. 4 (Rayan Dep. Tr. at 30-31, 42), and Exh. 3 (Hweih Dep. Tr. at 14-18).

showing the entity's gross receipts. *Id.*, Exhs. 7, 8 at ¶¶ 6-7. The DEA referred the matter to the United States Attorney's Office, which filed the verified complaint for forfeiture on May 22, 2019.

The same day, the government sent direct notice of these proceedings to the brothers via letter to their counsel of record, enclosing: a notice of forfeiture action; the verified complaint for forfeiture; and an arrest warrant *in rem*. The text of the government's cover letter included the following statement:

> The procedure and deadlines for filing a claim or petition are governed by Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, G(5)(A) and (B). Note that any claim or petition filed with the court must: (1) be signed under penalty of perjury, (2) identify the property at issue, (3) described (sic) the nature and extent of any interest, (4) detail the time and circumstances of acquisition, (5) list any additional facts and documents in support thereof, and (6) state the specific relief sought.

Pl.'s L.R. 56.1 Stmt., Exh. 13. Additionally, the government published notice of the funds' seizure at www.forfeiture.gov from May 23, 2019, to June 22, 2019. *Id.* at Exh. 14.

Each of the brothers filed a verified answer on June 12, 2019. Hweih's answer admits that he told a law enforcement agent that the cash in his bag "came from the sale of phones to his client in New York," Ans. at ¶ 68, but it does not identify or describe Hweih's interest, if any, in the funds. Similarly, Rayan's answer admits that he told an agent that the cash in his bag "was payment for the sale of cellular phones and electronics he had shipped

5

overseas to Dubai," *id.* at ¶ 94, but does not allege the nature of Rayan's interest. Neither the brothers, nor We Buy N Sell, Inc., filed a verified claim to the funds in this action.

## II.

Insofar as concerns a claimant opposing forfeiture, "[t]he main procedural requirements imposed by Rule G are that 'the claimant must show that he has filed a timely claim and answer, that the claim is properly verified, and that he has identified himself and alleged an interest in the property.'" *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 641 (7th Cir. 2015) (quoting Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 9-4, 326-27 (2d ed. 2013) (footnotes omitted)). Rules G(4) and G(5) set forth the deadlines for filing a verified claim, which depend upon the manner in which the claimant receives notice of the judicial action. Recipients of direct notice must file a claim by the date stated in the notice, which must be at least 35 days after the date notice is sent. Rule G(4)(b), G(5)(a)(ii)(A). All other persons must file a claim no later than 30 days after the final publication of notice in a newspaper, or no later than 60 days after the first publication of notice on an official government internet forfeiture site. Rule G(5)(a)(ii)(B). The brothers do not dispute that as recipients of direct notice, their deadline was June 27, 2019. *See* Pl.'s L.R. 56.1 Stmt., Exh.

6

13.[4] All other interested parties—including We Buy N Sell, Inc.—had until July 22, 2019, to file a verified claim. *Id*. at Exh. 14, 15.

The government argues that the brothers' undisputed failure to file a timely verified claim identifying their interest in the seized funds warrants striking their answers and entering judgment of forfeiture. The government observes in this connection that Rule G(8)(c)(i)(A) explicitly authorizes the government to move to strike a claim or answer for failure to comply with Rule G(5). But courts are not compelled to grant such motions upon proof that a claimant failed to satisfy Rule G(5). To the contrary, "the Advisory Committee Notes to Rule G(8) caution courts that when a motion to strike is brought pursuant to Rule G(8)(c)(i)(A), 'the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15.'" *United States v. Real Prop. Located at 17 Coon Creek Rd.,*

---

[4] Exhibit 13, which the government cites for this statement of fact, does not, on its face, establish June 27, 2019, as the deadline for the brothers to file a claim. But the cited exhibit contains only the government's cover letter and does not include the additional materials identified as enclosures. One of these items was the "Notice of Forfeiture Action," which likely identified June 27, 2019, as the deadline to file a verified claim. Even if it did not, however, the omission is of no consequence because the brothers do not dispute that they failed to file a claim by the latest possible date of July 22, 2019, or 60 days after the government first published notice on www.forfeiture.gov.

7

*Hawkins Bar California, Trinity Cty.*, 787 F.3d 968, 973 (9th Cir. 2015).

Here, the brothers seek leave to cure their failure to file timely verified claims by filing such claims now, nearly two years late. "A district court may in its discretion extend the time for the filing of a verified claim." *United States v. One (1) 1979 Mercedes 450SE Vehicle ID No. 116032-12-081839 License No. MKS 706*, 651 F. Supp. 351, 353 (S.D. Fla. 1987). But the factors courts typically consider in evaluating whether to exercise their discretion do not warrant relief here. Those factors include:

> whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time.

*Id.* (citing cases).

The brothers' motion for leave purports to address only two of these factors: the reason for the delay, and prejudice to the government. With respect to the first, the unadorned statement that their attorney "simply failed to realize that the judicial claims were required" is implausible given evidence that the government explicitly directed the brothers' attorney to Supplemental Rule G as supplying the relevant procedural requirements; advised the attorney that those requirements

8

included the filing of a "petition or claim" that, among other things, describes the nature and extent of the claimants' interest in the property; and reminded the attorney in subsequent communications about the need to file such a claim. *See* L.R. 56.1 Stmt., Exhs. 13-15. But even if I accept the brothers' proffered reason for the omission, it does not save them from the consequences of their attorney's neglect, since "[t]he failure of the attorney is...imputed to the claimant, and direct compliance with the filing requirements is typically required." *United States v. 1979 30-Foot Sea Ray, Express Cruiser, Hull Identification No. SERF23640579*, No. 00 C 5085, 2000 WL 1889676, at *1 (N.D. Ill. Dec. 28, 2000)(citing *United States v. Commodity Account No. 54954930*, 219 F.3d 595 (7th Cir. 2000), and *United States v. 7108 West Grand Ave., Chicago, Ill.*, 15 F.3d 633 (7th Cir. 1994)). Nothing in the brothers' submissions suggests that their failure to file timely claims as required by Rule G amounts to the type of "excusable neglect" that may warrant departure from the general rule requiring procedural compliance. *One (1) 1979 Mercedes 450SE*, 651 F. Supp. at 354.

The brothers also suggest that filing verified claims at this juncture, both on their own behalf and on behalf of their corporation, would not prejudice the government because: 1) the government has long known that the brothers "and their corporation, We Buy N Sell, Inc., have been claiming the return" of the funds

9

since 2019; and 2) the brothers' sworn administrative claims "identify[] their corporate entity ('We Buy N Sell, Inc.')." Resp. Br. at 1. But these observations—which, it bears noting, inaccurately characterize the record, as We Buy N Sell, Inc. has never "claim[ed] the return" of the seized funds in any forum—only reinforce the importance of filing timely verified claims that spell out, at the outset of the proceedings, the nature of a claimant's interest in the property. Because neither the brothers' verified answers in these proceedings, nor their verified administrative claims in the DEA's forfeiture proceedings does this, neither is an adequate substitute for the verified claim Rule G requires. *See*, e.g., Hweih's Answer at ¶ 68 (stating that funds "came from the sale of phones to [Hweih's] client in New York"); Rayan's Adm. Claim, Pl.'s L.R. 56.1 Stmt., Exh. 8 at ¶ 4 (the "purpose of that currency is with [Rayan's] employment as President of We Buy & Sell, Inc., in the business of used and electronic devices and repairs them and sells them"). Accordingly, these statements cannot reasonably be deemed sufficient to "meet[] the basic requirements of a verified claim."[5] *One (1) 1979 Mercedes 450SE*, 651 F. Supp. at 353.

---

[5] The remaining factors, which the brothers do not address, also counsel against granting leave to file their untimely verified claims: the government did not encourage the delay, and the brothers did not timely petition for an enlargement of time.

Moreover, the verified claims the brothers attach to their motion do not cure this fundamental defect, as the proposed claims likewise fail to allege clearly the nature and extent of their interest in the seized funds. Hweih and Rayan each state, "my interest in that property concerns my work as one of two shareholders in our Indiana Corporation, We Buy N Sell Inc." Verified Judicial Claims, DN 50, 51 at ¶ 2. But these vaguely worded assertions do not assert ownership of the funds. Meanwhile, the evidence that emerged in discovery all confirms that the funds were *not* the brothers' personal property but rather the property of We Buy N Sell, Inc. For example, the record includes the following evidence:

- The brothers' admissions that at the time of the seizure, they told law enforcement agents that the funds were payments made for the sale of electronics by We Buy N Sell, Inc., to a company in Dubai, and that Rayan showed an agent documents corroborating that assertion. *See* Pl.'s L.R. 56.1 Stmt. ¶¶ 3-5 and accompanying exhibits;

- The brothers' interrogatory responses describing the seized funds as "cash from the business they own." *See* Pl.'s L.R. 56.1 Stmt. ¶¶ 6-7 and accompanying exhibits;

- The brothers' interrogatory responses and corroborating documents indicating that the seized cash was "payment for the sale of electronics" by We Buy N Sell, Inc., to GZE – Gate Zone Electronics Trading Company, LLC, a company in Dubai. *See* Pl.'s L.R. 56.1 Stmt. ¶¶ 8-11 and accompanying exhibits; and

- The brothers' deposition testimony stating that the seized funds represented payments to We Buy N Sell, Inc., for products that We Buy N Sell, Inc., sold. *See* Pl.'s L.R. 56.1 Stmt. ¶¶ 13-19 and accompanying exhibits.

The government argues correctly that I may deem admitted all of these facts and grant summary judgment in its favor based on the brothers' failure to respond to the government's L.R. 56.1 Statement. *See Moffett v. Henderson*, 128 F. Supp. 2d 1162, 1164 (N.D. Ill. 2001) ("If a party fails to file a Local Rule 56.1(b)(3) statement responding to the moving party's statement of undisputed facts, the statement of facts submitted by the moving party will be taken as true"); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."). But even if I overlooked the brothers' non-compliance with the Local Rules, the record itself establishes beyond any reasonable dispute that the seized funds were exclusively the property of We Buy N Sell, Inc. Indeed, the brothers' deposition testimony forecloses even the interpretation (which they do not in fact raise) that although the seized funds were paid to the corporation, one or both of the brothers had an ownership interest in some quantifiable portion of the funds as monies they expected to receive in the form of wages, salary, or commissions. Rayan testified in this connection as follows:

Q: Okay. And do you have a salary at Buy N Sell?

12

A: Oh no. Every income or salary I make goes right in back—right back into my business.

Pl.'s L.R. 56.1 Stmt., Exh. 4 at 12:18-12:22. Accordingly, Rayan has not claimed—and cannot now claim, consistently with this testimony—an ownership interest in any portion of the seized funds as earned income or salary. *Cf. United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (observing that the claimant "would certainly have an ownership interest in earned income"), *overruled on other grounds by United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047 (8th Cir. 2019). Similarly, Hweih testified that at the time of the funds' seizure, he earned "a percentage on whatever inventory I would buy from the customers I made." Pl.'s L.R. 56.1 Stmt., Exh. 3 at 13:20-14:1. Whatever this may mean, it does not assert ownership of the funds the brothers claim We Buy N Sell, Inc., received for its sale of electronics to its client in Dubai. In short, the undisputed record establishes that We Buy N Sell, Inc., was the sole owner of the seized funds.

It follows from this conclusion that only the corporate entity, and not its shareholders or employees, has statutory standing to contest the forfeiture. *See*, e.g., *United States v. Dupree*, 781 F. Supp. 2d 115, 140 (E.D.N.Y. 2011) (explaining that it would "violate[] basic tenets of corporate law" to allow a shareholder to assert property rights in seized corporate funds).

13

The corporation did not do so in the administrative proceedings, and it has not done so in these proceedings. In sum: the brothers failed to submit timely verified claims; failed to respond to the government's L.R. 56.1 Statement; and failed to controvert evidence that We Buy N Sell, Inc., is the only entity with an ownership interest in the seized funds. Accordingly, the brothers have not established statutory standing to contest the forfeiture.

### III.

For the foregoing reasons, the government's motion for summary judgment and its ancillary motion to deem admitted the facts it asserts in its L.R. 56.1 Statement are granted. The brothers' motion for leave to file verified judicial claims is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 15, 2021